# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEVEN SCHWARTZ et al., | : | |
| Plaintiffs, | : | Civ. No. 17-9133 (FLW) (TJB) |
| v. | : | |
| DENNIS NUGENT et al., | : | **MEMORANDUM & ORDER** |
| Defendants. | : | |

Plaintiff Steven Schwartz ("Plaintiff" or "Steven") is a federal prisoner, currently on home confinement, and was previously incarcerated at Fort Dix FCI. Steven and Ilene Schwartz ("Ilene"), his mother[1] (collectively, "Plaintiffs"), are proceeding *pro se* with a Complaint asserting a claim under 42 U.S.C. § 1983 and various claims under New Jersey law, including medical malpractice. ECF No. 1. Presently before the Court are four renewed motions to dismiss Plaintiffs' Complaint, for among other things, failure to produce an Affidavit of Merit ("AOM") to support Steven's medical malpractice claim. In response to the motions to dismiss, Plaintiffs have filed a motion to amend their Complaint. For the reasons explained in this Memorandum and Order, the Court will deny without prejudice the motions to dismiss as improperly filed and appoint counsel *sua sponte* under *Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993) to represent Plaintiffs in this matter. The Court will also administratively terminate Plaintiffs' motion to amend, pending the appearance of counsel, who is free to file a new motion to amend, if appropriate.

---

[1] Ilene alleges a state law defamation claim, which is not discussed herein.

The court provides the following factual background and procedural history. In May 2017, Plaintiffs filed a *pro se* complaint in the Superior Court of New Jersey, Law Division, Mercer County, alleging claims against Dennis Nugent[2] ("Nugent"), Jarad Fingerman (" Dr. Fingerman"), St. Francis Medical Center ("St. Francis"), Robert Wood Johnson University Hospital ("RWJ University Hospital"), Jeffrey Gojaniuk (" Dr. Gojaniuk"), Michael Cohen ("Dr. Cohen"), Diane Doe, and various John Doe defendants for medical malpractice, fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, defamation, negligence, and civil conspiracy.[3] *See* ECF No. 3 ¶ 9; ECF No. 5-3, Exhibit A. That action is hereafter referred to as Schwartz I.

On or about October 20, 2017, Plaintiffs filed the present Complaint (hereafter referred to as "Schwartz II") in federal court against the same Defendants listed above and additionally naming Urology Care Alliance of Lawrenceville ("UCAL") and Dr. Fingerman's office manager, Diane Secusa. Like the Complaint in Schwartz I, the Complaint in Schwartz II asserts medical malpractice claims against Defendants Nugent, Fingerman, Cohen, UCAL, and Gojaniuk, as well as other state court claims for relief. Unlike the Complaint in Schwartz I, the Complaint in Schwartz II also asserts Eighth Amendment claims of deliberate indifference to Steven's serious medical needs. The medical malpractice and deliberate indifference claims arise from Defendants' alleged inadequate treatment of Steven's kidney stone over a five-year period, as well as the delayed removal of a ureteral stent. Schwartz II alleges that the individual

---

[2] Nugent is also listed as a defendant in this action, though he has not appeared. Steven Schwartz seems to believe that Nugent has died. *See* ECF No. 3 at 3 n.2.

[3] The defamation claim is the only claim in that action that seems to concern Ilene Schwartz. *See* ECF No. 5-3.

and entity Defendants have contracts with the Bureau of Prisons ("BOP") to provide treatment to inmates at Fort Dix.  *See* Complaint at ¶¶ 8-16.

According to the Complaint in Schwartz II, on or about December 12, 2010, Steven collapsed and was rushed to St. Francis and was diagnosed with a renal stone.  *Id.* ¶¶ 18-19.  Dr. Nugent of St. Francis was Steven's assigned doctor, and the Complaint alleges that St. Francis knew that Dr. Nugent was irrational and incompetent.  *Id.* ¶¶ 20-21.  Dr. Nugent told Steven he did not need surgery and discharged him.  *Id.* ¶ 22.  Steven continued to suffer from severe pain, vomiting, nausea, and fever over the next several months as the renal stone would not pass, and despite Steven's requests, Dr. Nugent and St. Francis refused to provide him treatment even though they knew that the BOP could not treat his condition or provide effective pain medication.  *Id.* ¶¶ 27-28.

On March 28, 2011, Steven was admitted to St. Francis, but the renal stone could not be removed due to an issue with his heart on the operating table.  *Id.* ¶¶ 29-30.  The Complaint alleges that Dr. Nugent created a false medical report claiming that the renal stone had spontaneously passed, which was untrue, and that Dr. Nugent and St. Francis knew the BOP would rely on the report and not provide necessary treatment to Steven.  *Id.* ¶¶ 31-36.  The Complaint alleges that St. Francis was aware of Dr. Nugent's propensity for incompetence and recklessness, but failed to protect Steven from Dr. Nugent.  *Id.* ¶ 37.

Steven was released back to Fort Dix and continued to experience pain due to the renal stone, and Dr. Nugent and St. Francis denied all Steven's requests for treatment from 2011-2015.  *Id.* ¶¶ 38-39.  Steven eventually suffered complete obstruction and severe hydronephrosis, and his right kidney shut-down, due to the untreated kidney stone.  *Id.* ¶¶ 40-43.  In addition, Steven's spleen and liver both became enlarged.  *Id.*

An ultrasound was performed on June 2, 2015, and an MRI was performed on September 15, 2015, both of which confirmed the need for surgery to remove the renal stone. *Id.* ¶¶ 43-44. The Complaint alleges that Defendants Dr. Nugent, Dr. Fingerman, UCAL, and St. Francis were deliberately indifferent to Steven's deteriorating condition and pain and suffering and "intentionally failed to schedule him for renal stone removal," despite knowing the risk that he would be permanently injured. *Id.* ¶ 45.

Months later, on January 6, 2016, Steven was transported to Defendant St. Francis Medical center and was examined by Defendant Fingerman who determined surgery was required, but without reason or cause, Defendants Fingerman and St. Francis allegedly delayed scheduling Steven's surgery for months, despite knowing that Steven was suffering and at risk of permanent injury from the delay. *Id.* ¶¶ 46-47. The Complaint further alleges that St. Francis was also aware of Dr. Fingerman's propensity for neglecting his patients. *Id.* ¶ 48.

On April 14, 2016, Steven was taken to Defendant RWJ University Hospital for surgery. *Id.* ¶ 49. Although Dr. Fingerman and the entity Defendants knew Plaintiff needed to be hospitalized for complications from the surgery, Plaintiff was released 30-90 minutes after the surgery. *Id.* ¶ 50-52. Defendants Fingerman, UCAL, and RWJ University Hospital also allegedly ordered Percocet for the pain but knew that FCI Fort Dix would not dispense the medication because BOP policy forbids dispensing narcotics. *Id.* ¶ 55.

According to the Complaint, an ureteral stent was also placed during the surgery on April 14, 2016, and Defendants Fingerman, UCAL and RWJ repeatedly delayed the surgery to remove the stent despite knowing that it was medically necessary to remove the stent within four weeks

of placement, and despite knowing that Plaintiff was in severe pain and at risk of permanent injury.[4]  *Id.* ¶¶ 56, 67.

Defendant Dr. Cohen, an associate of Dr. Fingerman, allegedly failed to evaluate Plaintiff for stent removal in the first week of May 2016, as scheduled, and both Defendants refused to treat Plaintiff or schedule him for surgery.  *Id.* ¶ 68.  At this time, Plaintiff continued to suffer from extreme pain, multiple infections, high grade fever, nausea, vomiting and heavy bleeding.  *Id.* ¶ 69.

Although Defendants Cohen, Fingerman, UCAL, and RWJ promised FCI Fort Dix staff that Steven would be admitted to RWJ University Hospital for stent removal no later than June 1, 2016, they allegedly engaged in multiple contrivances to avoid scheduling the surgery that they knew was necessary and overdue.  *Id.* at ¶ 72.

On or/about June 23, 2016, Defendant Cohen evaluated Steven, which was ten weeks following surgery and six weeks following the date Defendants Fingerman, UCAL and RWJ University Hospital determined the stent should be removed.  *Id.* at ¶ 74.  Although Dr. Cohen documented four types of medications that could be prescribed to alleviate some of Steven's pain, Dr. Fingerman and UCAL prescribed none of these medications.  *Id.* ¶ 75.

On July 15, 2016, Steven was handcuffed, shackled, placed in a van, and proceeded to RWJ University Hospital.  *Id.* ¶ 76.  Shortly before Steven's arrival, however, the custodial officers were called and told that the surgery was canceled, and the Complaint alleges that the surgery was canceled so the surgeon could play golf.  *Id.* ¶¶ 77-80.  Defendants Fingerman,

---

[4] Plaintiff also cites to the Annals of Urology for the allegation that a ureteral stent can stay in place for up to six weeks.  *See id.* at ¶ 73.

Cohen, UCAL, and RWJ continued to delay scheduling the surgery despite their knowledge that it was necessary and overdue. *Id.*

In the afternoon of July 15, 2016, Steven's bleeding worsened to a deep black color, his fever spiked and he was in extreme pain. *Id.* ¶ 81. FCI Fort Dix medical staff determined Steven needed to be hospitalized immediately for stent removal and treatment. *Id.*

Defendant RWJ University Hospital assigned Defendant Jeffrey Gojaniuk, an emergency room doctor, to treat Steven. *Id.* ¶ 82. After Defendant Gojaniuk confirmed Steven's heavy, dark-colored bleeding, enlarged lymph nodes and infection, Steven pleaded with Defendant Gojaniuk to remove the stent. *Id.* ¶ 84. Defendant Gojaniuk called Defendant Dr. Fingerman at home, and reported back to Steven that Defendant Fingerman refused to come to the hospital to remove the stent. *Id.* ¶ 85. Steven told Dr. Gojaniuk and RWJ University Hospital he was in extreme pain at Fort Dix, that the prison would not provide the required pain medication, and that Dr. Fingerman was engaging in numerous contrivances to avoid removing the stent. *Id.* ¶ 86. Steven requested admittance and asked to have another doctor be called in for stent removal. *Id.* ¶ 87.

Defendant Gojaniuk advised Steven that he was not qualified to remove the stent and that Defendant RWJ University Hospital had no surgeon available to remove the stent. Steven begged Defendant Gojaniuk and RWJ University Hospital to admit him because he was in severe pain, and Fort Dix could not handle his deteriorating medical condition, but Defendants refused. *Id.* Instead, Defendants Gojaniuk and RWJ University Hospital released Steven back to FCI Fort Dix, despite his severe pain and infections. *Id.* ¶ 88.

Over the next ten days, Steven continued to have an infection, experienced constant heavy bleeding, severe abdominal pain, nausea, vomiting, and respiratory symptoms. *Id.* ¶ 89. The only pain medication administered was Tylenol with Codeine. *Id.* at ¶ 90.

On July 27, 2016, Steven was admitted to RWJ University Hospital and the ureteral stent was finally removed, approximately 105 days after it was placed. *Id.* ¶ 91.

Plaintiff continued to have complications, and, on or about November 2016, FCI Fort Dix medical staff advised Steven that the kidney stone had become completely impacted and Steven suffered a complete obstruction despite the false report of Dr. Nugent, UCAL, and St. Francis, stating that stone had passed. *Id.* ¶¶ 94-45.

Based on these detailed allegations, Count One of the Complaint asserts medical malpractice claims against Defendants Nugent, Fingerman, Cohen, Gojaniuk, UCAL and Does (1-20). Count Eight of the Complaint asserts a constitutional claim of deliberate indifference to his serious medical needs under the Eighth Amendment for alleged inadequate medical care and unjustified delays in treatment.[5]

Defendants have filed four separate motions to dismiss the Complaint. Defendants spill considerable ink arguing that Plaintiff's medical malpractice claims against them must dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to provide a timely affidavit of merit ("AOM"),[6] and they have attached various exhibits from the parallel state court proceeding in Schwartz I.

---

[5] As noted above, Plaintiffs also assert several additional state law claims. In Count Two asserts a fraud claim against Defendants Nugent, St. Francis Medical Center and UCAL based on the falsification of Steven's medical records, which did not come to light until 2016. Counts Three and Four assert intentional and negligent infliction of emotional distress against all Defendants. Count Five asserts a defamation claim. Count Six asserts a negligence claim against all Defendants. Count Seven asserts a civil conspiracy claim against all Defendants.

[6] The New Jersey Affidavit of Merit Statute, N.J.S.A. 2A:53A-26 et seq., provides as follows:

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based on those documents, and matters of public record. *In re Bayside Prison Litig.*, 190 F.Supp.2d 755, 760 (D.N.J. 2002). Even if the Court were to assume that the proceeding in *Schwartz I* is a matter of public record, the Defendants motions seeking dismissal of Plaintiff's medical malpractice claims under Fed. R. Civ. P. 12(b)(6) ignore the Third Circuit's precedential decision in *Nuveen Municipal Trust v. Withumsmith Brown, P.C.*, 692 F.3d 283, 303 (3d Cir. 2012). There, the Third Circuit expressly held that that "the affidavit of merit is not a pleading requirement" in federal court (citing *Chamberlain v. Giampapa*, 210 F.3d 154, 160, 3d Cir. 2000), and instructed that such motions for dismissal are properly brought under Fed. R. Civ. P. 56 as motions for summary judgment.[7]

---

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, <u>within 60 days following the date of filing of the answer to the complaint by the defendant</u>, provide each defendant with an affidavit by an appropriately licensed person, stating that there exists a reasonable probability that the care, skill or knowledge exercised, or exhibited, in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.

N.J.S.A. 2A:53A-27 (emphasis added). If the affidavit of merit is not filed within 60 (or 120) days of the answer, the failure to file the AOM requires dismissal of the action with prejudice, § 2A:53A–29, unless the plaintiff meets one of the following four exceptions: (i) a statutory exception regarding lack of information; (ii) a "common knowledge" exception; (iii) substantial compliance with the affidavit-of-merit requirement; or (iv) "extraordinary circumstances" that warrant equitable relief. *See id.* § 2A:53A–28.

[7] The Affidavit of Merit statute states that failure to provide an Affidavit of Merit "shall be deemed a failure to state a cause of action," N.J.S.A. 2A:53A-29, but the timeline for filing an AOM is triggered by defendant's filing of an answer. Though state courts construe the failure to file an AOM as the failure to state a claim <u>at the pleading stage</u>, *see Ferreira v. Rancocas*

*Id.* at n.13 ("That the affidavit [of merit] is not a pleading requirement counsels that a defendant seeking to 'dismiss' an action based on the plaintiff's failure to file a timely affidavit should file a motion for summary judgment under Rule 56, and not a motion to dismiss for failure to state a claim under Rule 12(b)(6).").

Because Defendants' motions to dismiss on AOM grounds must be filed as motions for summary judgment, the Court finds that the motions to dismiss are improperly filed. The Court declines to convert the motions to dismiss due to Plaintiff's *pro se* status or to consider them as hybrid motions seeking dismissal pursuant to both Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56. As such, the Court will deny the motions to dismiss without prejudice as improperly filed.[8]

At this time, the Court will also *sua sponte* appoint counsel to represent Plaintiffs in this matter pursuant to § 1915. The "critical threshold determination" for appointing counsel is whether the case "has arguable merit in fact and law." *See Tabron v. Grace*, 6 F.3d 147, 158 (3d

---

*Orthopedic Associates*, 178 N.J. 144, 150 (2003) ("the plaintiff's failure to serve an affidavit within 120 days of the filing of the answer is considered tantamount to the failure to state a cause of action, subjecting the complaint to dismissal with prejudice."), the Third Circuit does not consider the AOM a pleading requirement or cause for dismissal under Rule 12(b)(6) because the AOM requirement is triggered only after the answer is filed.

[8] Moreover, to avoid necessary arguments later, the Court notes that Defendants' contention that the Court should use the answer date in Schwartz I to calculate Plaintiff's AOM due date in Schwartz II is unsupported and unpersuasive. Defendants cite *Kaselaan & D'Angelo Associates, Inc. v. Soffian*, 290 N.J. Super. 293, 300 (App. Div. 1996) (citations omitted) and rely on this lone quote from the *Kaselaan* decision: "[w]here it would be inappropriate for both cases to proceed simultaneously, 'the general rule [is] that the court which first acquires jurisdiction has precedence.'"). That quote, however, is cherrypicked from Judge Skillman's discussion of whether a state court presiding over a second-filed case should enter a stay until the conclusion of the first-filed case. *See Kaselaan*, 290 N.J. Super. at 296, which is not the issue before this Court. As such, *Kaselaan* does not support Defendants' argument that this Court should calculate the AOM due date in Schwartz II based on the date the answer was filed in Schwartz I. Indeed, because the AOM due date is triggered by the filing of an answer, and none of the Defendants filed their Answers in Schwartz II, it would appear, absent contrary authority, that Plaintiff's AOM in Schwartz II is not yet due. Moreover, Plaintiff filed the AOM in Schwartz II on February 1, 2021. *See* ECF No. 59.

Cir. 1993). In deciding whether to appoint counsel the Court also considers the following factors: (1) the applicant's ability to present his or her case; (2) the complexity of the legal issues presented; (3) the degree to which factual investigation is required and the ability of the applicant to pursue such investigation; (4) whether credibility determinations will play a significant role in the resolution of the applicant's claims; (5) whether the case will require testimony from expert witnesses; and (6) whether the applicant can afford counsel on his or her own behalf. *Tabron*, 6 F.3d at 155-157.

The Court has considered these factors and finds that appointment of counsel is warranted at this time. As described above, Plaintiff, who is indigent, *see* ECF Nos. 15, 28, alleges in specific detail that Defendants denied and delayed treating his renal stone for years without cause and despite their knowledge that he was in extreme pain and at risk of permanent injury. Plaintiff also alleges that Defendants unjustifiably delayed removing a surgical stent, causing him additional pain and complications. These allegations, if proven, go beyond mere negligence, and are more than sufficient, at this stage, to state federal constitutional claims for deliberate indifference to Plaintiff's serious medical needs.[9] This matter also includes complex legal issues and requires expert testimony, both of which weigh in favor appointing counsel.

---

[9] In order to state a claim for relief under the Eighth Amendment, Plaintiff must show a "(i) a serious medical need, and (ii) acts or omissions that indicate deliberate indifference to that need." *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citation omitted). Mere medical malpractice or disagreement with the proper treatment of an illness cannot give rise to a violation of the Eighth Amendment. *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990). The Court of Appeals has concluded that the deliberate indifference standard is met, however, "when prison officials 1) deny reasonable requests for medical treatment, and the denial exposes the inmate to undue suffering or the threat of tangible residual injury, 2) delay necessary medical treatment for non-medical reasons, or 3) prevent an inmate from receiving recommended treatment for serious medical needs, or deny access to a physician capable of evaluating the need for treatment." *Whooten v. Bussanich*, 248 F. App'x. 324, 326–27 (3d Cir. 2007) (citing *Monmouth v. Lanzaro*, 834, F.2d 326, 346–47 (3d Cir. 1987); *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993)). The Third Circuit has also held that prison officials who

In response to the renewed motions to dismiss, Plaintiff has filed a motion to amend his Complaint. In light of the decision to appoint counsel, the Court will administratively terminate the motion to amend, and permit appoint appointed counsel to file a motion to amend, if appropriate.

For these reasons, the Court (1) denies the motions to dismiss as improperly filed, (2) *sua sponte* appoints counsel to represent Plaintiff in this matter, and (3) directs the Clerk of the Court to administratively terminate Plaintiff's motion to amend in light of the appointment of counsel. The Court also (4) directs the Clerk of the Court to administratively terminate this matter pending counsel's appearance.

**IT IS, THEREFORE**, on this 28th day of June 2021,

**ORDERED** that the Defendants' motions to dismiss, ECF Nos. 52, 53, 54, & 57, are **DENIED WITHOUT PREJUDICE** as improperly filed; and it is further

**ORDERED** that pursuant to the Court's *sua sponte* authority under *Tabron v. Grace*, 6 F.3d 147, 156 (3d Cir. 1993), the Court requests an attorney to represent Plaintiffs pro bono pursuant to 28 U.S.C. § 1915(e)(1); and it is further

**ORDERED** that counsel shall enter an appearance in this matter within 30 days of his or her appointment; and it is further

**ORDERED** that in light of the appointment of counsel and for docket management purposes, the Court directs the Clerk of the Court to **ADMINISTRATIVELY TERMINATE** the motion to amend pending at ECF No. 64, and **ADMINISTRATIVELY TERMINATE** this

---

continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm act with deliberate indifference. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *White*, 897 F.2d at 109.

matter pending the assignment of counsel; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Order to Plaintiffs at the address on file.

/s/ Freda L. Wolfson  
Freda L. Wolfson  
U.S. Chief District Judge